**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED STATES OF AMERICA,

              -against-

JOSEPH MIRANDO,

                    Defendant.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14-CR-221 (ADS)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  **MAY 20 2020**  ★

LONG ISLAND OFFICE

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
*Attorneys for the Government*
271 Cadman Plaza East
Brooklyn, NY 11201
      By:    Artie McConnell, Assistant United States Attorney,

610 Federal Plaza
Central Islip, NY 11722
      By:
           Allen Lee Bode, Assistant United States Attorney,
           Diane C. Leonardo-Beckmann, Assistant United States Attorney.

**Sally J.M. Butler, Esq.,**
*Attorney for the Defendant*
42-40 Bell Blvd, Suite 302
Bayside, NY 11361

**SPATT, District Judge:**

On January 7, 2016, defendant Joseph Mirando (the "Defendant") pleaded guilty, pursuant to a written plea agreement, to conspiracy to commit bank fraud through a large-scale mortgage fraud perpetrated by principals Aaron Wider ("Wider") and John Petition ("Petition"). Specifically, the Defendant admitted that he provided fraudulent appraisals that artificially inflated the value of properties; were relied on by lending institutions; and ultimately were used to secure loan proceeds far in excess of the properties' true value.

1

On September 6, 2018, the Defendant was sentenced to 14 months' incarceration, $1,500,000 in restitution, and $1,200,000 in forfeiture. The Defendant is currently released from custody and serving a term of 3 years' supervised relief.

Presently before the Court is a petition by the Defendant requesting that the Court, pursuant to 28 U.S.C. § 2255 ("Section 2255"), a writ of *coram nobis*, or the Court's general equity jurisdiction, vacate and modify the judgment of forfeiture ordered against him (the "Forfeiture Order"). For the following reasons, the Court orders supplemental briefing regarding the Defendant's *coram nobis petition*, and denies the petition in all other respects.

## I. DISCUSSION

### A. AS TO SECTION 2255.

28 U.S.C. § 2255(a) applies only to "[a] prisoner in *custody* . . . claiming the right to be released." *Id.* (emphasis added). It is well settled that Section 2255 generally "may not be used to bring collateral challenges addressed solely to noncustodial punishments" like the forfeiture order. *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003). However, the Second Circuit has "left open the question whether such fines and orders 'could ever be such a restraint on the liberty of a petitioner as to amount to custody.'" *United States v. Rutigliano*, 887 F.3d 98, 105 (2d Cir. 2018) (quoting *Kaminski*, 339 F.3d at 86–87).

The Defendant argues that the Forfeiture Order constitutes a restraint on his liberty in light of the Supreme Court's ruling in *Honeycutt v. United States*, 137 S.Ct. 1626, 198 L.Ed 2d 73 (2017). On June 5, 2017, before the Defendant was sentenced, the Supreme Court held that 21 U.S.C. § 853(a)(1), which mandates forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" certain drug crimes, does not permit the application of joint and several liability to forfeiture by co-conspirators who never

2

possessed the tainted proceeds of their crimes. *Honeycutt*, 137 S.Ct. at 1635. Thus, the Defendant believes that his $1.2 million forfeiture judgment is erroneous, because he only received between $60,000 and $80,000 for his role in the conspiracy.

Putting aside the merits of the Defendant's interpretation of *Honeycutt*, he has failed to articulate any aspect of the Forfeiture Order that might impinge on his liberty. The Second Circuit has "observed" that situations in which a fine will trigger jurisdiction under Section 2255 "will likely be 'rare'" and depends on the "'terms' of [the fine], as well as the 'amount.'" *Rutigliano*, 887 F.3d at 106 (quoting *Gonzalez v. United States*, 792 F.3d 232, 237 (2d Cir. 2015)). In *Kaminski v. United States*, the Second Circuit found a $21,180 restitution order not to equate to custodial punishment reviewable under Section 2255; focused on the terms of payment, which were there limited "on a monthly basis [to] the greater of ten percent of [the defendant's] monthly income or $100," and concluded that those terms did "not come close to" creating a sufficiently severe restraint on liberty to equate to custody. 339 F.3d at 87. "Following *Kaminski*, district courts in this circuit have dismissed § 2255 challenges to even multi-million-dollar restitution orders based on similar payment terms." *Rutigliano*, 887 F.3d at 106.

In light of this authority, neither the amount nor payment terms of the Forfeiture Order are problematic. Although $1,200,000 is a large sum of money, it is far smaller than amounts expressly approved by the Second Circuit. *Id.* (citing fines of $9,301,538 and $6,984,000). As in *Kaminski*, the Forfeiture Order sets the maximum payments at 10% of the Defendant's gross monthly income. Moreover, the Defendant cites no other restraints on his liberty in the Forfeiture Order that may equate to custody, such as "physical presence at particular times and locations." *Id.* at 106.

Therefore, the Court finds that it lacks jurisdiction to entertain a motion for relief under Section 2255, regardless of the applicability of *Honeycutt*. Indeed, "courts have universally

3

rejected the argument that *Honeycutt* can form the basis to disturb a final forfeiture order on a Section 2255 petition." *Lasher v. United States*, No. 12-cr-868, 2018 WL 3979596, at *9 (S.D.N.Y. Aug. 20, 2018) (collecting cases).

## B. AS TO *CORAM NOBIS* RELIEF.

*Coram nobis* relief is "an 'extraordinary remedy' available only in rare cases." *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014) (quoting *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954)). Its application is "strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *United States v. Foont*, 93 F.3d 76, 78 (2d Cir. 1996). The writ is "essentially a remedy of last resort" because unlike *habeas* relief, the petitioner is no longer in custody. *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998) (per curiam); *see also United States v. Mandanici*, 205 F.3d 519, 532 (2d Cir. 2000) (Kearse, J., concurring) ("[T]he granting of coram nobis normally results in the expungement of the conviction, with no possibility of further proceedings to determine whether the petitioner was guilty of the offense charged."). "The harm to the petitioner is therefore much less and, accordingly, courts are more reluctant to grant relief." *Moskowitz v. United States*, 64 F.Supp.3d 574, 577 (S.D.N.Y. 2014) (collecting cases).

In light of this high bar, a petitioner seeking the grant of *coram nobis* must make three showings: (1) "there are circumstances compelling such action to achieve justice"; (2) "sound reasons exist for failure to seek appropriate earlier relief"; and (3) "the Petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Kovacs*, 744 F.3d at 49. The Court presumes that the prior proceedings were correct, and "the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512, 74 S.Ct. 247.

4

The Court finds that the Defendant satisfied the latter two elements, but that further briefing is required to determine whether sufficiently compelling circumstances exist to issue a writ of *coram nobis*.

      a. <u>As to Whether There Are Circumstances Compelling Such Action to Achieve Justice.</u>

The Defendant presents two grounds for vacating the Forfeiture Order: (1) the alleged violation of his Sixth Amendment right to effective assistance of counsel; and (2) the excessiveness of the Forfeiture Order allegedly in contravention of the Eighth Amendment. The Court finds that the Defendant failed to establish a constitutional violation regarding the latter theory, but that the parties must furnish additional briefing in order to determine whether the Defendant presented a cognizable claim for relief under the former theory.

      *i. As to the Defendant's Ineffective Assistance of Counsel Claim.*

"[I]neffective assistance of counsel is one ground for granting a writ of *coram nobis*." *See Kovacs*, 744 F.3d at 49. A petitioner seeking *coram nobis* based on allegedly ineffective assistance of counsel bears the "heavy burden" of establishing both "(1) that counsel's performance was so unreasonable under prevailing professional norms that 'counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment' and (2) that counsel's ineffectiveness prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Here, the Supreme Court decided *Honeycutt* between the Defendant's plea and his sentencing. Thus, The Defendant argues he suffered from ineffective assistance of counsel, because defense counsel failed to inform him of *Honeycutt*; failed to raise objections to the

5

forfeiture amount at the time of his sentencing; and never appealed the forfeiture amount. In response, the Government argues that defense counsel could not have been ineffective because the Defendant agreed to the forfeiture amount in his plea agreement, and could not have predicted *Honeycutt's* applicability to the statute governing the Defendant's forfeiture. In the Court's view, neither party has adequately addressed the relevant issues, requiring further briefing.

"*Honeycutt* narrowly addresse[d] the issue of whether joint and several liability is available for forfeiture for co-conspirators in certain drug crimes under 21 U.S.C. § 853(a)(1)." *Lasher*, 2018 WL 3979596, at *10. The Forfeiture Order here is based on a different statutory provision: 18 U.S.C. § 982(a)(2)(A). The Second Circuit has still not yet ruled on *Honeycutt's* applicability to other criminal forfeiture statutes. *See United States v. Tanner*, 942 F.3d 60, 67 (2d Cir. 2019) ("[W]e have not yet fully defined the parameters of *Honeycutt*."); *United States v. Fiumano*, 721 F. App'x 45, 51 n.3 (2d Cir. 2018) ("In light of the government's concession, we need not here decide whether Honeycutt's ruling, made with respect to a forfeiture order under 21 U.S.C. § 853(a)(1), applies equally in all respects to forfeiture orders under other statutes, including 18 U.S.C. § 981(a)(1)(C), applicable here.").

At first indication, that fact alone might support the Government's assertion that *Honeycutt* has no bearing on the present case. As a Government points out, "an attorney is not normally expected to foresee future changes in the law, and his failure to do so does not constitute ineffectiveness." *Swerbilov v. U.S.*, No. 04-cv-3320, 2005 WL 1177938, at *4 (E.D.N.Y. May 18, 2005); *accord Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("Counsel is not required to forecast changes in the governing law."). On a closer look, the Government's argument does not withstand scrutiny.

Section 982(a)(2) permits courts to order the forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." Its language "shares several features with 21 U.S.C. § 853," the statute at issue in *Honeycutt*, "such as a reach limited to property 'constituting' or 'derived from' proceeds obtained 'directly or indirectly' from the crime." *United States v. Brown*, 714 F. App'x 117, 118 (3d Cir. 2018). Section 982 also "expressly incorporates 21 U.S.C. § 853(p), among the other procedures in § 853." *United States v. Chittenden*, 896 F.3d at 638 (citing 18 U.S.C. § 982(b)(1)). Based on these similarities, *Honeycutt* seems directly applicable to Section 982(a)(2). *See Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-cr-621, 2019 WL 3526590, at *2 (S.D.N.Y. Aug. 2, 2019) ("[T]he Court concludes that *Honeycutt* is most likely applicable because the indictment relied in part on 18 U.S.C. § 982, which incorporates § 853 by reference.").

Further, there was no binding Second Circuit precedent at the time of the Defendant's sentencing permitting the imposition of joint and several liability. The Second Circuit has upheld joint and several liability under Section 981. Other district courts have relied on these cases to conclude that joint and several liability persists under other forfeiture statutes, notwithstanding the ruling in *Honeycutt. See, e.g., United States v. McIntosh*, No. 11-cr-500, 2017 WL 3396429, at *6 (S.D.N.Y. Aug. 8, 2017); *Lasher*, 2018 WL 3979596, at *10.

However, the Second Circuit cases cited by those courts relied on the specific meaning of the terms in the particular forfeiture statutes at issue. *See United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012) (describing Section 981(a)(1)(C), providing for forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation"); *United States v. Torres*, 703 F.3d 194 (2d Cir. 2012) (describing Section 981(a)(2)(A), providing for forfeiture of "property of any kind obtained directly or indirectly, as the result of the

7

commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense").

The Second Circuit has recognized that that the language of those provisions is "much broader" than the language of Section 982(a)(2). *See United States v. Seabrook*, 661 F. App'x 84, 86 (2d Cir. 2016) (describing the language in Section 853(a) requiring the forfeiting of "any proceeds the person obtained" or "any of the person's property"). Therefore, other courts' allowance of joint and several liability under other forfeiture provisions does not necessarily support joint and several liability here. *Cf. United States v. Kenner*, No. 3-cr-607, 2020 WL 1148671, at *10 (E.D.N.Y. Mar. 10, 2020) ("Whether *Honeycutt* precludes joint and several forfeiture liability under 18 U.S.C. § 982(a)(1), for a conviction of a money-laundering offense, is an issue of first impression in this Circuit.").

Consequently, it is not, as the Government suggests, the case that the Court issued the Forfeiture Order, only for the law to change in the Defendant's favor after his conviction became final. Indeed, multiple circuits ruled that *Honeycutt* precludes joint and several forfeiture liability under Section 982(a)(2) *before* the Court sentenced the Defendant. *See Brown*, 714 F. App'x at 118 ("[W]e conclude that *Honeycutt* applies with equal force to § 982(a)[.]"); *Chittenden*, 896 F.3d at 640 ("In light of the Supreme Court's decision in *Honeycutt*, we hold that 18 U.S.C. § 982(a)(2) precludes joint and several forfeiture liability.").

Rather, defense counsel swore in an affidavit that he simply failed to raise a potentially viable challenge to the forfeiture amount ordered by the Court due to the fact that he was unaware of *Honeycutt*. ECF 392-2 ¶ 7. "Errors caused by counsel's ignorance of the law are errors that run afoul of the objective standard of reasonableness." *Noble v. Kelly*, 89 F.Supp.2d 443, 463 (S.D.N.Y. 2000); *see also Cornell v. Kirkpatrick*, 665 F.3d 369, 379 (2d Cir. 2011) ("Cornell's

8

counsel admits that his actions were a result of an omission and cannot be viewed objectively as sound trial strategy."); *Cox v. Donnelly*, 432 F.3d 388, 390 (2d Cir. 2005) (finding counsel's performance "fell below prevailing standards of professional conduct" where "he did not challenge the trial court's intent instructions because he did not then know that they were illegal under state and federal law").

Accordingly, the Court finds that defense counsel's oversight of *Honeycutt* satisfies the first prong of the *Strickland* test. *See Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir. 1998) ("Although an attorney is not usually faulted for lacking the foresight to realize that a higher court will subsequently identify a defect in jury instructions similar to those used at his client's trial, an attorney nonetheless may be held responsible for failing to make such an objection when precedent supported a 'reasonable probability' that a higher court would rule in defendant's favor.").

As to *Strickland*'s second prong, the Court is not prepared to rule on whether counsel's error prejudiced the Defendant for two reasons.

First, the parties have not adequately briefed *Honeycutt*'s applicability to Section 982(a)(2). The Defendant's argument merely amounts to identifying that *Honeycutt* exists, whereas the Government simply asserts that *Honeycutt* analyzed a different statute. Neither party has fully addressed its impact on the particular statutory language underlying the Forfeiture Order.

Second, assuming *Honeycutt's* applicability, the parties have not adequately addressed the lawfulness of the forfeiture amount. Even if joint and several liability is prohibited, the Forfeiture Order will still stand if the Defendant in fact obtained $1.2 million in profits from the scheme. *See United States v. Dervishaj*, No. 13-cr-668, 2017 WL 3531525, at *2 (E.D.N.Y. Aug. 16, 2017) ("[T]he trial record establishes, by more than a preponderance of the evidence, that John Doe #2, as a result of Dervishaj's own extortion, made payments totaling $10,000 that were received by

9

Dervishaj. Thus, these payments comport with the standard laid down in *Honeycutt*."); *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc.*, No. 05-cr-621, 2019 WL 3526590, at *3 (S.D.N.Y. Aug. 2, 2019) ("[E]ven assuming that *Honeycutt* applies to the forfeiture orders in question, the Court finds that it does not bar the forfeiture orders in this case because both Vilar and Tanaka personally obtained all the profits of their scheme.").

On one hand, the Defendant makes a conclusory assertion that he only received between $60,000 and $80,000 in compensation for his role in the conspiracy. On the other hand, the Government disagrees with this estimate, but provides no evidence regarding what "property constituting, or derived from, proceeds the [Defendant] obtained directly or indirectly, as the result of" his participation in the conspiracy. Section 982(a)(2).

The Government appears to believe that the Court should uphold the Forfeiture Order due solely to the fact that the Defendant agreed to the amount ordered in his plea agreement. The Government's view is contrary to law. The forfeiture amount must be based on a preponderance of evidence. *United States v. Peterson*, 820 F. Supp. 2d 576, 581 (S.D.N.Y. 2011); *see also* Fed. R. Crim. P. 32.2(b)(1)(B). A plea agreement lacking a stipulation of facts does not necessarily carry that burden. *Libretti v. United States*, 516 U.S. 29, 43, 116 S. Ct. 356, 365, 133 L. Ed. 2d 271 (1995) ("We do not mean to suggest that a district court must simply accept a defendant's agreement to forfeit property, particularly when that agreement is not accompanied by a stipulation of facts supporting forfeiture[.]").

None of this is to say that the Government must now re-establish the propriety of the Forfeiture Order. Indeed, in a motion for *coram nobis* relief, it is the Defendant's burden to establish prejudice as a result of his counsel's errors, namely, that the facts demand a lower

forfeiture award. However, the Government must at least present *some* factual or legal basis supporting the amount ordered.

Therefore, the Court directs the parties to provide supplemental briefing regarding the two issues identified by the Court.

### ii. As to the Defendant's Eighth Amendment Claim.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., Amend. 8. The Supreme Court has explained that "the word 'fine' . . . mean[s] a payment to a sovereign as punishment for some offense." *Browning–Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (footnoted omitted). "The Excessive Fines Clause thus 'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (quoting *Austin v. United States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)).

The Second Circuit has established a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment." *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016). First, a court must "determine whether the Excessive Fines Clause applies at all." *Id.* at 109 (citing *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028). That requirement is met if a forfeiture "may be characterized, at least in part, as 'punitive'—*i.e.*, forfeitures for which a defendant is personally liable." *Id.* (citing *Bajakajian*, 524 U.S. at 327–28, 118 S.Ct. 2028).

Second, a court must "determine whether the challenged forfeiture is unconstitutionally excessive." *Id.* (citing *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028.) "A forfeiture is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's

11

offense.'" *Id.* at 110 (quoting *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028). The Second Circuit

has articulated a four-factor test governing this inquiry:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

*Id.* (quoting *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015)). It is the defendant's burden

to demonstrate that the forfeiture amount is unconstitutional. *Id.*

Although the Defendant easily satisfies the first step, because he's challenging a forfeiture

order, he has not carried his burden of establishing that the Forfeiture Order was unconstitutionally

excessive. The Defendant merely makes the conclusory assertion that "[t]he grossly inflated

forfeiture of 1.2 million dollars is excessive" and "grossly disproportional to the gravity of [his]

offense." ECF 392 at 5.

The Defendant was responsible for approximately half of the false appraisals used in a

mortgage fraud scheme that caused $22,487,799 in actual losses. Although the Defendant's role

in the scheme was secondary to that of the principal conspirators Wider and Petition, his services

were still crucial. His argument that he only received $60,000 to $80,000 in fees for his fraudulent

appraisals is of no moment, because the damage he proximately caused is much larger than that.

Moreover, the Court accounted for his lesser role in the scheme by only holding him responsible

for $1,200,000, an amount representing approximately 5% of the total loss.

Therefore, the Defendant has failed to establish a violation of the Eighth Amendment.

b. <u>As to Whether Sound Reasons Exist for Failure to Seek Appropriate Earlier Relief.</u>

Courts have interpreted the requirement that sound reasons exist for a defendant's failure

to seek appropriate earlier relief to mean that "the failure to either directly appeal [an] order or

12

take other timely action bars a petitioner from challenging that order through a petition for a writ of error coram nobis." *Carnesi v. United States*, 933 F. Supp. 2d 388, 395 (E.D.N.Y. 2013) (Spatt, J.).

The Government argues that the Court should deny the Defendant's petition as untimely, because he never directly appealed the Forfeiture Order or sought *habeas* relief while in custody. The Court notes that the Defendant initially sought leave to pursue the requested relief on July 3, 2019, less than a year after his conviction became final and before the expiration of his term of imprisonment. Moreover, the Defendant blames his failure to object to the forfeiture amount on direct appeal on ineffective assistance of counsel. As the Court previously discussed, he might possess a viable claim in that regard. If established, that would excuse his failure to seek earlier relief. *See Carnesi*, 933 F. Supp. 2d at 396 (finding that *coram nobis* petitioner established that he had "sound reasons for his failure to seek earlier appropriate relief" due to ineffectiveness of counsel "both in failing to raise objections to" a restitution order at sentencing "and in failing to file a notice of appeal").

Therefore, the Court finds that the Defendant satisfied this requirement for obtaining *coram nobis* relief.

c.   As to Whether the Defendant Suffers Continued Legal Consequences.

Although the Defendant is no longer is incarcerated, he will continue to suffer legal consequences from his conviction due to his not yet satisfied obligation to pay the full amount of the ordered forfeiture—$1,200,000. *See Carnesi*, 933 F. Supp. 2d at 394 (finding the requirement to pay restitution demonstrated that a petitioner no longer in custody "will continue to suffer legal consequences that may be remedied by granting a writ of error coram nobis"); *Mansour v. United States*, No. 11-cr-612, 2015 WL 1573327, at *4 (S.D.N.Y. Apr. 9, 2015) ("[W]e will follow other

courts in this Circuit in holding that a defendant may challenge a restitution order by petitioning for the common law writ of error coram nobis.").

**C. AS TO GENERAL EQUITY JURISDICTION.**

The Defendant alleges that the Court has authority to vacate the Forfeiture Order pursuant to something known as its "general equity jurisdiction." The Court disagrees. The only support he provides for this principle are comments by Alexander Hamilton in the Federalist Papers. He cites no cases from this jurisdiction, or elsewhere, holding that the Court may *sua sponte* vacate a portion of his sentence in the absence of demonstrating an entitlement to *habeas* or *coram nobis* relief. Therefore, the Court finds the Defendant is not entitled to relief on this basis.

## II. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that the Court denies the Defendant's motion to vacate pursuant to 28 U.S.C. § 2255 in its entirety; and

**ORDERED** that the Court denies the Defendant's *coram nobis* petition to the extent that it claims the Forfeiture Order violates Eighth Amendment; and

**ORDERED** that the Court reserves judgment pending further briefing on the remainder of the Defendant's *coram nobis* petition; and

**ORDERED** that the Court directs the parties to provide supplemental briefing regarding (1) the applicability of *Honeycutt* to 18 U.S.C. § 982(a)(2)(A) and (2) the lawfulness of the Forfeiture Order under *Honeycutt* no later than 60 days from the issuance of this opinion.

It is **SO ORDERED**:

Dated: Central Islip, New York

May 20, 2020

/s/ Arthur D. Spatt

ARTHUR D. SPATT

United States District Judge